IN THE MATTER OF: THE ELIZABETH EDUCATION ASSO-
CIATION, HERBERT LEVITT, PRESIDENT, LOUIS
ALT, JOAN WALSH, AND DENISE GEBRIAN, CHARGED
WITH CONTEMPT OF COURT.

Superior Court of New Jersey
Appellate Division

Argued October 11, 1977—Decided November 10, 1977.

292

Before Judges ALLCORN, MORGAN and HORN.

*Mr. Gerald M. Goldberg* argued the cause for appellants The Elizabeth Education Association, Herbert Levitt (president), Louis Alt, Joan Walsh and Denise Gerbrian (*Messrs. Goldberg & Simon,* attorneys; *Mr. Louis P. Bucceri* on the brief).

*Mr. Paul A. Massaro,* Assistant Prosecutor, argued the cause for respondent (*Mr. John H. Stamler,* Union County Prosecutor, attorney).

The opinion of the court was delivered by

HORN, J. A. D. Defendants Elizabeth Education Association (EEA), Herbert Levitt, Louis Alt, Joan Walsh and Denise Gebrian appeal from convictions of contempt in a summary proceeding (R. 1:10-2-4) entered against them on October 16 and October 22, 1975.[1]

The convictions arose out of a strike of the public schools of the City of Elizabeth which are under the jurisdiction of Elizabeth Board of Education (board). EEA was the representative and exclusive collective negotiations unit (N. J. S. A. 34:13A-5.3) for all certified personnel employed by the board, including teachers as well as noncertified personnel under contract or appointment. Defendant Levitt was the president of EEA. He and the other named individual defendants were EEA's principal negotiators.

Following the convictions the judge imposed fines on all defendants and, in addition, terms of incarceration on the individual defendants. The fines and terms of incarceration were graduated on the basis of the number of days during which defendants were found to be in contempt.

The proceedings commenced on October 6, 1975 with the filing of a verified complaint by the board on the basis of which the judge issued an *ex parte* restraint and order to show cause directed to defendants. The order included injunctions against picketing, striking, participating in any strike, and ordering, commanding, directing, assisting, abetting or counselling any person in such activities. The order also directed the parties to continue to bargain in good faith. It was made returnable on Friday, October 10, 1975.

On October 7, 1975, the day following the issuance of the restraining order, the judge, on the basis of affidavits con-

---

[1]The October 22, 1975 convictions were orally announced on said date. They were formally entered in an order on December 3, 1975. No point is made that the appeal was taken as to this order before the judgment was formally entered. We will continue to refer to the order as that of October 22, 1975.

cerning the activities of defendants (each individual defendant being a school employee), issued an order reciting the disobedience of the mandates contained in the order to show cause and directing defendants to show cause before another judge on Friday, October 10, 1975, in the following language:

> \* \* \* in a penal proceeding as to why said named defendants should not be adjudged guilty of contempt of this Court for their failure to obey the aforesaid Order in that they continue to participate in, a strike against the Plaintiff, Board of Education and continue to interfere with, obstruct, impede, and delay the Plaintiff, Board, and its officers in the performance of their duties and functions in the conduct of the Elizabeth School program *on October 7, 1975.* [Emphasis supplied]

The order appointed the Union County Prosecutor to prosecute the proceedings and was captioned as for a penal contempt proceeding. *R.* 1:10-2.

On October 10, 1975, the return date of the contempt order to show cause, the judge conducted a hearing which terminated on October 15, 1975. On October 16, 1975 the judge found defendants guilty of contempt of the October 6, 1975 restraining order for not only October 7, but also October 8, 9, 10, 14 and 15, for which sanctions were imposed.

Thereafter a further hearing was scheduled to determine whether defendants were in "continued contempt" on October 16, 17, 20 and 21, 1975. This hearing was also predicated upon the October 7, 1975 contempt show-cause order. Upon a stipulation that if the hearing were held the same proofs, objections, court rulings and findings would be made, the judge on October 22, 1975 orally announced his finding that defendants were guilty of contempt on October 16, 17, 20 and 21, 1975, for which additional penalties were imposed upon them. Defendants' appeal comprehends both of the orders of October 16 and October 22, 1975, and the sanctions imposed thereby.

We turn first to defendants' contention that the judgments and sanctions exceeded the scope of the order to show cause for penal contempt.

As observed, on the basis of the single order of October 7, 1975 — why defendants should not be adjudged guilty of contempt for their failure to obey the aforesaid order "in that they continue to interfere with, obstruct, impede, and delay the Plaintiff, Board, and its officers * * * in the conduct of the Elizabeth School program on October 7, 1975" — the judge found defendants guilty of the penal contempt on the stated days in addition to October 7, 1975. We agree that this determination exceeded the scope of the October 7 order, evidencing a confusion as to the fundamental differences between contempt proceedings calling for punitive measures and contempt proceedings calling for coercive measures in aid of a litigant.

██ The procedures to be followed depend on the objectives of the proceedings. The law can no longer be said to be uncertain. The differences between the procedural and substantive aspects of each were comprehensively explained and delineated in the landmark opinion of the late Chief Justice Weintraub in *N. J. Dept. of Health v. Roselle*, 34 *N. J.* 331 (1961). As stated in *Roselle* (at 337), a penal contempt is a public wrong, a defiance of governmental authority which must be accompanied by a *mens rea*, an intention to willfully disobey or an indifference to it. The state of mind is irrelevant with respect to the private (civil) wrong.

██ The object of the proceeding — *i. e.,* whether civil or criminal — is of great importance. If it is criminal, the accused is entitled to the safeguards accorded one charged with crime, except the constitutional guarantees of the indictment and trial by jury. *Roselle, supra* at 338–339.

Further, if the proceeding is criminal, the judgment must be a finite sentence, whereas if the proceeding is civil, incarceration ends when the need for coercion ceases, *i. e.,* upon defendant's compliance with the order. [Id. at 339]

Defendants were charged with contumacious conduct pinpointed to one day only, October 7, 1975. The hearing should have been confined to their conduct on that one day. *In re Parsippany-Troy Hills Ed. Ass'n,* 140 *N. J. Super.* 354, 360 (App. Div. 1975). In that case the restraining order which was allegedly violated by defendants was issued on September 25, 1975. The contempt show-cause order was entered and served on September 29, 1975 and made returnable on September 30, 1975. Unlike the order of October 7, 1975 in the case at bar, it did not focus the contempt on a single day. Instead it stated that defendants failed to obey the command of the September 25 order. Each defendant pled guilty to the contempt which was charged. The judge imposed penalties for defendants' contempt occurring on September 25, 26, 29 and 30, 1975, and directed that the penalties continue "until such time that the Association complies with the restraining Order * * *." 140 *N. J. Super.* at 357. On appeal the court said:

We agree with defendants' contention that it was improper for the judgment to incorporate provisions providing for additional penalties if they should continue to disobey the September 25 order. In a penal or criminal contempt proceeding the judgment must be a "finite sentence," *N. J. Dept. of Health v. Roselle,* 34 *N. J.* 331, 339 (1961), fixing punishment for defendants' prior contemptuous conduct in willfully challenging the authority of the court. *Roselle, supra* at 337. If further acts of contempt are committed, prosecution and punishment therefor are available only in proceedings thereafter to be instituted charging such new violations. [at 360]

Because the hearing and convictions went beyond the single day, October 7, 1975, charged in the contempt show-cause order, the orders must be vacated in all respects except as to the contempts which allegedly occurred on that date. We add that the board may have instituted proceedings for relief to litigant pursuant to *R.* 1:10–5. As to the procedure for this type of relief, which we believe to have been confused with penal contempt in the case at bar, see *N. J. Dept. of Health v. Roselle, supra* 34 *N. J.* at 344; *Lusardi v. Curtis*

*Point Prop. Owners Ass'n,* 138 *N. J. Super.* 44, 50 (App. Div. 1975).

■ Confining the question of contempt to October 7, 1975, we now take up defendants' contention that the convictions were fatally defective because the contempt show-cause order failed to specify the acts allegedly constituting the contempt. We perceive no merit in this argument. We are satisfied that defendants were sufficiently notified by the order to show cause for contempt as to "the acts or omissions alleged to have been contumacious." *R.* 1:10-2. Clearly, the carrying on of the strike by the failure to report for work as employees as well as the "ordering, * * * directing, assisting, abetting, counselling, persuading or suffering in any manner whatsoever any person or persons" who strike or participate therein was prohibited.

■ Although an indictment is not necessary for a prosecution of a penal contempt, a defendant is nevertheless entitled to the notice requirements that an indictment would provide. In this respect the order to show cause why he should not be held in contempt must provide such notice. In effect the contempt show-cause order is a substitute for an indictment in that it must state the essential accusatorial facts constituting the alleged disobedience. Thus, it must minimally contain a "written statement of the essential facts constituting the offense charged." *R.* 3:7-3. See *State v. Spano,* 128 *N. J. Super.* 90 (App. Div. 1973), aff'd 64 *N. J.* 566 (1974); *State v. Browne,* 86 *N. J. Super.* 217, 232 (App. Div. 1965).

The contempt show-cause order contained sufficient allegations of the contumacious conduct on October 7. We do not agree that *Green Brook Zoning Bd. of Adj. v. Datchko,* 142 *N. J. Super.* 501, 509-510 (App. Div. 1976), supports defendants' position. The court in that case concluded that defendant may have been misled as to the relief available under the terms of the contempt show-cause order. Although the court also declared that the contempt order to show cause was fatally deficient because it failed to specify within its

four corners the acts or omissions constituting the contempt, it also appears in that case that without such specification the particular acts or omissions were ambiguous. It is not so in the case at bar, wherein the order stated that it was issued "for their failure to obey the aforesaid order in that they continue to participate in, a strike * * *."

 Defendants also submit that the judge erred in failing to extend to them adequate discovery and time to prepare their defense. The granting of a continuance is a matter exclusively within the province and sound discretion of the trial judge and should not be upset unless it appears from the record that defendant suffered manifest wrong or injury. *State v. Lamb*, 125 *N. J. Super.* 209 (App. Div. 1973). This is especially true where public matters are involved. *Jersey City Ass'n, etc., Church and State v. Jersey City*, 34 *N. J.* 177 (1961).

In the case at bar counsel for defendant EEA appeared before the court when the contempt show-cause order was presented to the judge on October 7. On October 9 the same counsel was retained by the individual defendants, so that even before being retained by the individuals counsel was familiar with the matter. The hearing commenced on October 10, the return day. The issue was comparatively uncomplicated. Defendants contend that they did not have sufficient opportunity to consult with their counsel before the hearing because the individual defendants were compelled to meet constantly in negotiating sessions. However, they did not request the judge before the date of the hearing to excuse them from negotiations to prepare for the hearing or for discovery of any type. The taking of testimony commenced at 1:30 P.M. on October 10, 1975. On that date two witnesses completed their testimony and one witness was still on direct examination when the hearing was adjourned until Tuesday, October 14, 1975. Our review of the testimony leads us to conclude that defendants had ample opportunity to prepare during this hiatus. We are unconvinced that de-

fendants' involvement in the negotiations left them no time to consult with their counsel. The failure of the individuals to retain counsel under the circumstances until the day before the hearing instead of immediately after being served with the contempt order to show cause on October 7, 1975 does not provide an acceptable basis for delaying the proceedings. We need not decide in this case whether contempt defendants are entitled to discovery (*cf. R.* 4:67–1 *et seq.*). Defendants' failure to request the court to amplify the specifications of the alleged contempt before the date of trial confirms our belief that, in any event, amplification was not necessary for defendants to prepare for the hearing. Moreover, defendants' argument on this point is based upon a hearing involving their alleged contumacious conduct on days in addition to October 7, 1975. If the only date involved was October 7, as we have already determined, there would hardly be any need for either a continuance or discovery. Accordingly, we find this argument to be without merit.

Nor do we find substance in any of defendants' other contentions. Pursuant to *R.* 2:10–4 and *N. J. S. A.* 2A:10–3 we have reviewed the convictions on the law and the facts. We are satisfied that the evidence sustains these convictions for contempt of court perpetrated on October 7, 1975. The trial judge imposed the following penalties upon defendants for their contumacious conduct on that day: $4,500 fine to be paid by EEA; $100 fine and five days to be served in the Union County jail as to Herbert Levitt; $70 fine and 2½ days to be served in the Union County jail as to Louis Alt, and $80 fine and 2½ days to be served in the Union County jail as to each, Denise Gebrian and Joan Walsh. On October 22, 1975 the sentences were suspended and the individual defendants were placed on probation. We concur in these sentences. The order for probation is vacated, as are all sanctions other than the payment of fines as imposed for the contempt on October 7, 1975 and the time of incarceration already served.

Consistent with what we have stated, the order adjudging defendants to be in contempt on October 7, 1975 is affirmed. The orders adjudging defendants to be in contempt on days other than October 7, 1975 are reversed.